**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **NORMA W. PERKINS**, |
| Plaintiff, |
| v. |
| **NANCY BERYHILL, in her official capacity as Acting Commissioner of the U.S. Social Security Administration**, |
| Defendant, |

Case No. 1:17-cv-01013 (TNM)

## MEMORANDUM OPINION

Norma Perkins filed this case seeking review of the Social Security Administration's ("SSA") decision to deny her application for disability benefits. She suffers from various mental health disorders and a right-foot deformity, and she claims that these maladies have left her unable to work. The SSA considered and rejected these claims three times. The third denial came after a hearing conducted by an Administrative Law Judge ("ALJ").

Ms. Perkins now seeks a reversal of the ALJ's decision. The SSA objects. The case was referred to a Magistrate Judge who considered the parties' arguments. She recommends that the Court grant Ms. Perkins's motion and remand her case for an immediate award of benefits. Because it finds that the ALJ's decision violated the "treating physician rule," the Court will remand the case. But as the record does not show a clear entitlement to benefits, an immediate award is improper. The case will therefore be returned to the ALJ for additional fact-finding.

# I.

## A.

To qualify for Supplemental Security Income, a claimant must establish that she is "disabled." 42 U.S.C. §§ 423(a)(1)(D), 1382(a)(1). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is disabled, in other words, only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

The SSA uses a five-step sequential evaluation process to assess a claimant's alleged disability. *See* 20 C.F.R. § 416.920. The claimant bears the burden of proof on the first four steps. *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). The first step requires the claimant to show that she is not now engaged in substantial gainful employment activity. 20 C.F.R. § 416.920. Second, she must show that she has a "severe medically determinable physical or mental impairment" that "significantly limits" her ability to do basic work activities. *Id*. Step three requires a showing that her impairment "meets or equals" one of the impairments listed in Appendix 1 of the SSA's regulations. *Id*. If this is established, the SSA concludes the claimant is disabled and the inquiry ends. *Id*. If not, the analysis proceeds to the fourth step. At this stage, the SSA considers the claimant's "residual functional capacity," and she must show that she cannot "still do [her] past relevant work." *Id*. Such a showing triggers the final step of the analysis. Step five requires the SSA to determine whether the claimant can make "an

adjustment to other work" based on her residual functional capacity. If she cannot, she is disabled. *Id*.

**B.**

Ms. Perkins applied for Supplemental Security Income in 2013. Compl. 2, ECF No. 1. She alleged that she is "disabled by the combined functional limitations resulting from her bipolar II disorder . . ., post-traumatic stress disorder . . ., medication side effects from treatment for these disorders, and a right-foot deformity from third-degree burns as a child." *Id*. The SSA denied her claim initially and upon reconsideration. ECF No. 7-2 at 20.[1]

Ms. Perkins then requested a hearing before an ALJ. *See* Compl. 2; ECF No. 7-2 at 20. She testified at this hearing, and the ALJ also heard from a vocational expert. ECF No. 7-2 at 20-30. After considering the evidence before him, the ALJ denied Ms. Perkins's application. *Id*. at 30.

In his decision, the ALJ used the five-step evaluation framework. First, he found that Ms. Perkins "has not engaged in substantial gainful activity" since she filed her application for benefits. *Id*. at 22. Next, he determined that Ms. Perkins's right foot deformity and mental health disorders are "severe." *Id*. at 22. He added that these disabilities "limit [her] ability to perform the strength and non-strength demands of basic work activities." *Id*.

But, at step three, the ALJ found that the severity of Ms. Perkins's conditions did not "meet or medically equal" the severity of any of the listed impairments in Appendix 1 of the SSA's regulations. *Id*. at 23. He explained that, to rise to the level of the listed impairments, Ms. Perkins's mental disorders "must result in at least two of the following:

- Marked restriction of activities of daily living;

---

[1] All citations are to the page numbers generated by ECF.

- Marked difficulties in maintaining social functioning;

- Marked difficulties in maintaining concentration, persistence, or pace; or

- Repeated episodes of decompensation, each of extended duration."

*Id*. (citing the requirements of the listed mental disorders described in 20 C.F.R. Part 404, Subpart P). A "marked" difficulty or restriction is "more than moderate but less than extreme." *Id*.

The ALJ found that Ms. Perkins had not shown marked limitations in any these four categories. *Id*. He concluded, for instance, that in "activities of daily living, the claimant has mild restriction," as she "has no problem with her personal care, . . . [and] can also use the bus, shop in stores, watch television, and spend time with others daily." *Id*. Similarly, the ALJ found that Ms. Perkins had "moderate," but not marked, difficulties in social functioning and in concentration, persistence, or pace. *Id*. And he found no evidence of episodes of decompensation for an extended duration. *Id*. at 24.

In making these determinations, the ALJ considered the opinion of Michelle Broadnax, Ms. Perkins's treating psychiatrist. *Id*. at 27. Dr. Broadnax filled out a "Mental Residual Functional Capacity Questionnaire" in which she opined that Ms. Perkins has "marked" difficulties in maintaining sustained concentration, persistence, and social interactions. *See* ECF No. 7-8 at 23-26. The ALJ assigned this opinion "little weight." ECF No. 7-2 at 27. He found that it was "not fully consistent with Dr. Broadnax's treatment notes, which show the related objective findings to be mixed, and normal in some cases." *Id*. He noted that the treatment notes included assessments that "are indicative of only mild to moderate psychological symptoms." *Id*.

4

Going on to steps four and five, the ALJ determined that Ms. Perkins can perform "jobs involving simple, routine, repetitive tasks, with no production rate for pace of work." *Id*. He added that she "was able to work prior to the application date (though under [substantial gainful activity] level), and there is no evidence as to what changed" after she applied for benefits. *Id*. at 27. And he found that she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id*. at 30.

Based on these and other findings, the ALJ held that Ms. Perkins was not "disabled" under the Social Security Act. *Id*. at 20. She appealed. But the SSA's Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision." *Id*. at 2. So the ALJ's decision is the final agency action. *Id*.

## C.

Ms. Perkins then filed this case under 42 U.S.C. § 405(g), which allows for judicial review of the SSA's final decision in federal district court. She argues that the ALJ erred "by failing to give controlling weight to the medical opinion of [her] treating physician, Dr. Broadnax, about the nature and severity of [her mental] impairments." Compl. 3. And she believes that "[o]nce the proper weight is given to Dr. Broadnax's medical opinion, a finding of disability is compelled" as the record "does not support" the ALJ's conclusions about her ability to work. Compl. 4.

The Magistrate Judge agreed. She recommends finding that the ALJ failed to explain sufficiently his decision to accord Dr. Broadnax's opinion little weight. R. & R. at 9, ECF No. 15. She suggests that the ALJ's analysis was "wholly inadequate," that he failed to identify any inconsistencies in the physician's treatment notes, and that his decision relied on improper speculation. *Id*. at 9-11. And she believes that this "rampant speculation" and failure to give the

5

Broadnax opinion controlling weight warrant an award of immediate benefits. *Id*. at 13. She therefore recommends that the Court grant Ms. Perkins's Motion for Judgment of Reversal, ECF No. 9, and deny the SSA's Motion for Judgment of Affirmance, ECF No. 10. *Id*. at 13-14.

The SSA objects to these recommendations. *See* Def.'s Obj. to R. & R., ECF No. 16 ("Def.'s Obj."). It believes that substantial evidence supports the ALJ's assessments. *Id*. at 1. And it argues that the Magistrate Judge erred in recommending the immediate award of benefits because the record does not show that Ms. Perkins is entitled to such a decision. *Id*.

## II.

The SSA's "ultimate determination will not be disturbed if it is based on substantial evidence in the record and correctly applies the relevant legal standards." *Butler*, 353 F.3d at 999. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It "requires more than a scintilla, but [it] can be satisfied by something less than a preponderance of the evidence." *Id*. The Court may not determine itself whether Ms. Perkins is disabled. *Id*. Rather, its review is limited to "assess[ing] only whether the ALJ's finding that she is not is based on substantial evidence and a correct application of the law." *Id*.

When a claimant submits opinions from her "treating" physician, the SSA gives those opinions "controlling weight" if it finds that they are "well-supported by medically acceptable clinical and diagnostic techniques" and are "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). The SSA considers six factors in deciding the weight to accord a medical opinion:

- Whether the opinion comes from a doctor who has examined the claimant;
- Whether the opinion comes from a doctor who has treated the claimant;

6

- The amount of relevant evidence, including medical signs and laboratory findings, the opinion presents;

- The consistency of the opinion with the record as a whole;

- Whether the opinion is from a specialist about the medical issues the opinion discusses; and

- Any other factors the claimant brings to the SSA's attention about the opinion or the treating doctor. *See* 20 C.F.R. § 404.1527(c).

Based on these regulations, the D.C. Circuit has developed a "treating physician rule of [its] own." *Butler*, 353 F.3d at 1003. This rule holds that a "treating physician's report is binding on the fact-finder unless contradicted by substantial evidence." *Id*. Thus, the law "require[s] an ALJ who rejects the opinion of a treating physician to explain his reasons for doing so." *Id*. "Bare statements" and "passing references to the other medical opinions" in the record are "insufficient to override the substantial weight due [the treating physician's] opinion. *Id*.

### III.

Having reviewed the record to determine whether the ALJ's conclusions are based on substantial evidence, the Court makes two findings. First, the ALJ failed to explain sufficiently his reasons for declining to accord Dr. Broadnax's opinion controlling weight. Because of this failure, his decision violates the Circuit's treating physician rule. Second, a reasonable fact-finder could conclude that substantial evidence contradicts Dr. Broadnax's medical assessments. Thus, a remand for further findings is appropriate.

# A.

The ALJ's explicit discussion of the Broadnax opinion is limited to one paragraph in his eleven-page decision. *See* ECF No. 7-2 at 27. He proffered two reasons for assigning the opinion little weight—it is "not fully consistent with Dr. Broadnax's treatment notes" and it is "internally inconsistent." *Id*. Neither is adequately explained.

Consider first Dr. Broadnax's treatment notes. The ALJ suggested that they "show the related objective findings to be mixed, and normal in some cases." *Id*. But he failed to identify any specifics from the notes that contradict the doctor's opinion, which found that Ms. Perkins "has marked limitation in many of her work-related abilities." *Id*.

The Magistrate Judge observed, for example, that "Dr. Broadnax utilized the term 'normal' only to describe [Ms. Perkins's] 'Psychomotor Activity.'" R. & R. at 10 (citing ECF No. 7-7 at 40). But that someone exhibits normal psychomotor activity during a treatment session is not necessarily inconsistent with her having marked limitations in concentration, social interactions, or adaptation. Indeed, Dr. Broadnax's treatment notes also suggest that Ms. Perkins has "Concentration Problems," and that her judgment and insight are "Poor." ECF No. 7-7 at 40. These notes could be read as supporting, rather than contradicting, her ultimate conclusions.

Similarly, the ALJ failed to detail the Broadnax opinion's internal inconsistencies. His decision examines Ms. Perkins's Global Assessment of Functioning ("GAF") scores. ECF No. 7-2 at 27. GAF scores measure how much a person's psychological symptoms affect her daily life. *See Williams v. Colvin*, 134 F. Supp. 3d 358, 365 (D.D.C. 2015) ("While an individual's GAF score is never dispositive of disability, an ALJ may consider a claimant's GAF scores as relevant evidence of the claimant's general functional abilities."). The Broadnax opinion found

that Ms. Perkins's "highest GAF score in the last year is 60 and her current GAF score is 55."
ECF No. 7-2 at 27.

These scores, the ALJ suggested, are "not indicative of a disabling level of limitation." *Id*. He added that he accorded Ms. Perkins's high GAF scores "significant weight," noting that they are "indicative of only mild to moderate psychological symptoms." *Id*. But the ALJ also explained that a "GAF score represents a particular clinician's subjective evaluation at a single point in time," and that it "may vary from day to day, from time to time, and between practitioners." *Id*. at 27-28. Because of this, the ALJ "generally gives less weight to a specific GAF score than to the bulk of other, more convincing evidence." *Id*. at 27. In fact, he suggested that "in this case, the other evidence is generally more informative and is given more weight." *Id*. at 27.

It is difficult to square the ALJ's treatment of Ms. Perkins's GAF scores with his position on the limited usefulness of such scores. The ALJ does not explain why the two scores identified by the Broadnax opinion were given significant weight. Nor does he provide his reasons for concluding, given the other "generally more informative" evidence in the record, that these scores contradict the treating physician's overall assessment about Ms. Perkins's ability to perform work. Because of these deficiencies, the Court finds that the ALJ's decision violates the Circuit's treating physician rule.

The SSA's arguments to the contrary are unpersuasive. It suggests that "substantial evidence supports the ALJ's evaluation of Dr. Broadnax's disability opinion." *Id*. at 3. Maybe so. But the Court may "only consider the grounds proffered by the agency in its decision," as "*post hoc* rationalizations do not suffice." *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 32-33 (D.D.C. 2013); *see also Butler*, 353 F.3d at 1003 (emphasizing that it is the ALJ who should

9

explain the weight he attaches to the treating physician's conclusions and his reasons for doing so). The ALJ's decision, even when read holistically as the SSA asks the Court to do, does not show how the record evidence supports the ALJ's treatment of the Broadnax opinion. The Court therefore rejects this objection.[2]

## B.

But the SSA's next objection to the Magistrate Judge's Report *is* persuasive—a remand for an immediate award of benefits is improper. Whether the ALJ sufficiently explained his reasoning and whether the record shows that Ms. Perkins cannot work are two distinct inquiries. While the Court finds for Ms. Perkins on the former, it cannot do so on the latter.

Indeed, as the SSA suggests, the record contains evidence that appears to undermine Dr. Broadnax's conclusions about Ms. Perkins's ability to work. *See* Def.'s Obj. at 4-5. For instance, Drs. Nicole Simpson and Nancy Heiser also assessed the claimant's mental health. Dr. Simpson found that Ms. Perkins's "ability to maintain attention and concentration for extended periods" is only "moderately limited." ECF No. 7-3 at 11. She also determined that her "ability to sustain an ordinary routine without special supervision," and her "ability to work in coordination with or in proximity to others without being distracted by them" are "[n]ot significantly limited." *Id*. Similarly, Dr. Heiser found that Ms. Perkins "can concentrate for 2 hour periods to complete a normal 8 hour work day." *Id*. at 28. Like Dr. Simpson, she believed that Ms. Perkins suffers only mild or moderate limitations across several mental health and residual functional capacity categories. *Id*. at 27-28.

---

[2] The SSA also challenges the Magistrate Judge's observation that it "did not file a reply to Plaintiff's opposition, and the time for doing so has long since passed." R. & R. at 8. It suggests that it followed the Court-ordered briefing schedule, and that "it was an error for the R&R to criticize the Commissioner for filing a sur-reply brief." Def.'s Obj. at 2. This objection is irrelevant to the merits of the case. Both parties have presented their arguments, which the Court has fully considered.

10

These findings seem to directly contradict the Broadnax opinion. And they suggest that the opinion may not fit the record as whole, perhaps justifying a decision by the SSA to accord it little weight. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). At the very least, they lend credibility to the SSA's repeated insistence that Dr. Broadnax's "extreme checkbox opinion" was merely a form questionnaire "not supported by the record." *See* Def.'s Obj. at 5.

It would be improper for the Court to weigh these competing medical judgments to determine whether Ms. Perkins is disabled enough to receive the benefits she seeks. That is the ALJ's role. *See Butler*, 353 F.3d at 999 ("[W]e are not to determine ourselves whether [the claimant] is disabled; we assess only whether the ALJ's finding that she is not is based on substantial evidence and a correct application of the law."). Because it cannot make this determination, the Court cannot conclude that Dr. Broadnax's opinion *should* be given controlling weight or that Ms. Perkins's impairments meet or medically equal the listed impairments in Appendix 1.

Generally, a remand for an award of benefits is appropriate only "where the evidence on the record as a whole is clearly indicative of disability and additional hearings would serve no purpose other than to delay the inevitable receipt of benefits." *Espinosa*, 953 F. Supp. 2d at 36 (cleaned up). A cursory review of similar cases reveals the high bar this standard imposes on plaintiffs seeking an immediate award of benefits from federal courts.

In *Butler*, for instance, the court catalogued several errors the ALJ made in reaching his decision. He "failed to properly consider [the claimant's] inability to meet certain physical demands of work activity." 353 F.3d at 1000. He failed to "properly consider the opinion of

11

[the claimant's] treating physician . . . who repeatedly opined that [the claimant] could not lift, reach[,] or stoop." *Id*. at 1001. He failed to consider at least five medical opinions or diagnoses suggesting that the claimant felt a pain of the severity and degree that she alleged. *See id.* at 1005. Yet the court did not remand the case for an immediate award of benefits. *See id.* at 1006.

Similarly, in *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181 (D.C. Cir. 2008), the court first noted that the Rossello family's "journey through the Social Security Administration's hearing process began more than 15 year ago." *Id*. at 1182. The issue in that case was whether the claimant had engaged in substantial gainful activity rendering her ineligible for disability benefits. *Id*. Some "subsidized" labor does not count as gainful activity and thus does not disqualify the claimant. *See id*. The court found that the SSA "cited no evidence to undermine the only conclusion that the record permits—namely that [the claimant's] earnings were subsidized." *Id*. at 1186. Still, the court explicitly declined to remand the case for an immediate award of benefits. *Id*.

More so than in these cases, the record here is far from clearly substantiating a disability. And, while the Court recognizes that bureaucratic delay can be a source of considerable frustration, it cannot circumvent the administrative process and the ALJ's role as a factfinder. Thus, the Court will remand the case for further proceedings.

## IV.

For these reasons, the Magistrate Judge's Report and Recommendation will be adopted in part. The SSA's Motion for Affirmance will be denied, Ms. Perkins's Motion for Reversal will be granted in part, and the case will be remanded to the SSA. A separate Order accompanies this Opinion.

Dated: May 7, 2019                                          TREVOR N. McFADDEN, U.S.D.J.